# Exhibit A

## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Office of Inspector General (OIG-HHS) of the Department of Health and Human Services (HHS)(collectively the "United States"); Metropolitan Ambulance & First-Aid Corp. (now known as SEZ Metro Corp.) (hereinafter "Metropolitan"); Metro North Ambulance Corp. (now known as SEZ North Corp.) (hereinafter "Metro North"); Big Apple Ambulance Service, Inc. (formerly DBA United Ambulance) (hereinafter "Big Apple"); Larry Kaplan (hereinafter "Relator"), and his counsel, Philip R. Michael (hereinafter "Relator's Counsel") (hereinafter referred to collectively as "the Parties"), through their authorized representatives.

### II. PREAMBLE

As a preamble to this Agreement, the Parties agree to the following:

A. Metropolitan, Metro North, and Big Apple (hereinafter "the Ambulance Companies") are ambulance companies incorporated in New York State that participated in the Medicare Program (Medicare), Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh through January 1999.

B. Relator is an individual resident of New Jersey. On or about May 26, 2000, Relator filed a qui tam action in the United States District Court for the Eastern District of New York captioned United States ex rel. Larry Kaplan v. ING Equity Partners, L.P. et al., No. CV 00-3010 (hereinafter "the Civil Action") asserting claims against the Ambulance Companies, among others. Relator amended his complaint on or about December 26, 2001 to assert claims

against Steve Zakheim. The United States intervened in the Civil Action and filed its Complaint Upon Intervention on or about October 30, 2003.

  C. The United States contends that it has certain civil claims, as specified in Paragraphs 4 and 5, below, against the Ambulance Companies and Steve Zakheim (hereinafter, "the Defendants") for allegedly engaging in the following conduct during the period August 29, 1995 to the Effective Date of this Agreement (hereinafter referred to as the "Covered Conduct"):

  The United States contends that the Defendants made, used, or caused to be made or used false documents (hereinafter "False Documents") to avoid refunding money to Medicare in response to audits of the Ambulance Companies which Empire Medicare Services (Empire) commenced in 1995 (hereinafter "the Overpayment Demands"). The United States contends that the False Documents (which the United States alleges contained falsified signatures, had information added to them after they had been signed, and/or misrepresented the person and/or facility from which the letters purported to come) were submitted to Empire staff and fair hearing officers, administrative law judges, the Departmental Appeals Board, and/or the United States District Court for the Eastern District of New York to reduce the Overpayment Demands.

  D. Big Apple and Metro North requested stays of their appeals of the Overpayment Demands in 2004 and represent that they have taken no action, and made no submissions, in those appeals since 2004.

  E. This Agreement is made in compromise of disputed claims. This Agreement is not an admission of facts or liability by any Defendant, and all of the Defendants

expressly deny the allegations of the United States and the Relator as set forth herein and in the Civil Action and deny that they engaged in any wrongful conduct in connection with the Covered Conduct. This Agreement is not a concession by the United States that its claims against any Defendant are not well-founded.

F. The United States also contends that it has certain administrative claims against the Defendants for engaging in the Covered Conduct.

G. To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, the Parties reach a full and final settlement pursuant to the Terms and Conditions below.

### III. TERMS AND CONDITIONS

1. The Ambulance Companies jointly and severally agree to pay to the United States $2,850,000 (the "Settlement Amount"). The foregoing payment shall be made as follows: The Ambulance Companies agree to pay the full Settlement Amount to the United States by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of New York to Benjamin J. Vernia, The Vernia Law Firm, counsel for the Ambulance Companies. The Ambulance Companies agree to make this electronic funds transfer no later than five business days after the Effective Date of this Agreement.

2. Conditioned upon the United States receiving the Settlement Amount from the Ambulance Companies, and subject to the receipt and accuracy of the written notification required by Paragraph 19, and as soon as feasible after the receipt of that written notification, the United States agrees to pay 21.7% percent of the amount received to the Relator ("the Relator's

Share"), by electronic funds transfer. It is expressly understood and agreed that the United States in no way promises, guarantees, nor is liable to the Relators for the collection or payment of any funds pursuant to this Agreement or the payment of the Relators' share except as provided herein for funds actually collected and received by the United States.

3. The Ambulance Companies shall pay attorneys' fees to the Relator and Relator's Counsel in the amount of $129,000.00. This amount shall be paid as an electronic funds transfer to Relator's Counsel (to be allocated in accordance with his instructions) no later than seven (7) days after the stipulations of dismissal are filed as set forth in Paragraph 19.

4. Subject to the exceptions in Paragraph 8 (concerning excluded claims), below, in consideration of the obligations of the Ambulance Companies in this Agreement, conditioned upon the Ambulance Companies' full payment of the Settlement Amount, and subject to the receipt and accuracy of the written notification required by Paragraph 19, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release each of the Ambulance Companies and their respective officers, directors, employees, attorneys, successors, transferees and assigns from any civil or administrative monetary claim the United States has asserted, could have asserted, or may assert in the future against the Ambulance Companies for the Covered Conduct under: the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for using false documents or making false statements which the Civil Division of the Department of Justice has actual and present authority to assert and

compromise pursuant to 28 C.F.R. Part O, Subpart I, 0.45(d); or the common law theories of payment by mistake, unjust enrichment, disgorgement, and fraud.

5. Subject to the exceptions in Paragraph 8 (concerning excluded claims), below, in consideration of the obligations of the Ambulance Companies in this Agreement, conditioned upon the Ambulance Companies' full payment of the Settlement Amount, and subject to the receipt and accuracy of the written notification required by Paragraph 19, the United States (on behalf of itself, its officers, agents, agencies, and departments) agrees to release Steve Zakheim and his heirs, successors, attorneys, agents and assigns, from any civil or administrative monetary claim the United States has asserted, could have asserted, or may assert in the future against Steve Zakheim for the Covered Conduct under: the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; any statutory provision creating a cause of action for civil damages or civil penalties for using false documents or making false statements which the Civil Division of the Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, 0.45(d); or the common law theories of payment by mistake, unjust enrichment, disgorgement, and fraud.

6. In consideration of the obligations of the Ambulance Companies in this Agreement, the Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, and Relator's Counsel, for himself and for his past and current law firms, his heirs, successors, attorneys, agents, and assigns, hereby release the Ambulance Companies and their predecessors, subsidiaries, corporate parents and affiliates, successors and assigns, and current or former officers, directors, and employees, from any claims or allegations, and Steve Zakheim and his

heirs, successors, attorneys, agents and assigns, from any claims that the Relator and Relator's Counsel have asserted, could have asserted or may assert in the future against any of them, whether or not related to or arising from the United States' investigation and prosecution of the qui tam action, including without limitation, claims relating to or arising under the False Claims Act, any federal or state statute, the common law, or in equity.

7. OIG-HHS expressly reserves all rights to institute, direct, or to maintain any administrative action seeking exclusion against the Defendants and/or their officers, directors, and employees from Medicare, Medicaid, and all other Federal health care programs (as defined in 42 U.S.C. § 1320a-7b(f)) under 42 U.S.C. § 1320a-7(a) (mandatory exclusion), or 42 U.S.C. § 1320a-7(b) or 42 U.S.C. 1320a-7a (permissive exclusion).

8. Notwithstanding any term of this Agreement, specifically reserved and excluded from the scope and terms of this Agreement as to any entity or person (including the Defendants and Relator) are the following claims of the United States:

    a. Any civil, criminal, or administrative liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including mandatory exclusion from Federal health care programs;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon such obligations as are created by this Agreement;

    f. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    g. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct;

    h. Any liability for failure to deliver goods or services due;

    i. Any liability for any conduct after the Effective Date of this Agreement, including, but not limited to, using or causing to be used, any False Documents at issue in the Civil Action in any appeals from the Overpayment Demands to Metro North and Big Apple that may continue after the Effective Date of this Agreement.

Nothing in this paragraph or any provision of this Settlement Agreement constitutes an agreement by the Defendants to waive, toll, or suspend any statute of limitations or repose regarding any claims of any person, entity, or state or federal governmental agency, or a concession that any such claim is or would be well-founded. The Defendants reserve any and all defenses to any such claims.

    9. Relator and his heirs, successors, attorneys, agents, and assigns agree not to object to this Agreement and agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B) and conditioned upon receipt of the Relator's Share, Relator, for himself individually, and for his heirs, successors, agents, and assigns, fully and finally releases, waives, and forever discharges the United States, its officers, agents, and employees, from any claims arising from or relating to 31

U.S.C. § 3730; from any claims arising from the filing of the Civil Action; and from any other claims for a share of the Settlement Amount; and in full settlement of any claims Relator may have under this Agreement. Relator and Relator's Counsel agree that they will not file nor permit to be filed any petition against the Ambulance Companies under the Bankrupcty Code within 120 days of the Effective Date of this Agreement. This Agreement does not resolve or in any manner affect any claims the United States has or may have against the Relator arising under Title 26, U.S. Code (Internal Revenue Code), or any claims arising under this Agreement.

10. The Defendants waive and shall not assert any defenses the Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action. Nothing in this paragraph or any other provision of this Agreement constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

11. The Defendants fully and finally release the United States, its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that the Defendants have asserted, could have asserted, or may assert in the future against the United States, its agencies, employees, servants, and agents, related to the Covered Conduct and the United States' investigation and prosecution thereof.

12. The Settlement Amount shall not be decreased as a result of the denial of claims for payment now being withheld from payment by any Medicare carrier or intermediary or any state payer, related to the Covered Conduct; and the Ambulance Companies agree not to resubmit to any Medicare carrier or intermediary or any state payer any previously denied claims related to the Covered Conduct, and agree not to appeal any such denials of claims. Nothing in this paragraph shall bar Metro North or Big Apple from continuing their pending appeals of previously disallowed claims.

13. The Ambulance Companies agree to the following:

a. <u>Unallowable Costs Defined:</u> That all costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47; and in Titles XVIII and XIX of the Social Security Act, 42 U.S.C. §§ 1395-1395hhh and 1396-1396v; and the regulations and official program directives promulgated thereunder) incurred by or on behalf of the Ambulance Companies, their present or former officers, directors, employees, shareholders, and agents in connection with the following shall be "Unallowable Costs" on government contracts and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP):

(1) the matters covered by this Agreement;

(2) the United States' audit(s) and civil and any criminal investigation(s) of the matters covered by this Agreement;

(3) The Defendants' investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil and any criminal

investigation(s) in connection with the matters covered by this Agreement (including attorney's fees);

    (4) the negotiation and performance of this Agreement;

    (5) the payment the Ambulance Companies make to the United States pursuant to this Agreement and payments (if any) that the Ambulance Companies may make to Relator, including costs and attorneys fees; and

   b. <u>Future Treatment of Unallowable Costs:</u> That these Unallowable Costs shall be separately determined and accounted for by the Ambulance Companies, and the Ambulance Companies shall not charge such Unallowable Costs directly or indirectly to any contracts with the United States or any State Medicaid program, or seek payment for such Unallowable Costs through any cost report, cost statement, information statement, or payment request submitted by the Ambulance Companies or any of their subsidiaries or affiliates to the Medicare, Medicaid, TRICARE, or FEHBP Programs.

   c. <u>Treatment of Unallowable Costs Previously Submitted for Payment</u>: That within 90 days of the Effective Date of this Agreement the Ambulance Companies shall identify to applicable Medicare and TRICARE fiscal intermediaries, carriers, and/or contractors, and Medicaid and FEHBP fiscal agents, any Unallowable Costs (as defined in this Paragraph) included in payments previously sought from the United States, or any State Medicaid program, including, but not limited to, payments sought in any cost reports, cost statements, information reports, or payment requests already submitted by the Ambulance Companies or any of their subsidiaries or affiliates, and shall request, and agree, that such cost reports, cost statements, information reports, or payment requests, even if already settled, be

adjusted to account for the effect of the inclusion of the unallowable costs. The Ambulance Companies agree that the United States, at a minimum, shall be entitled to recoup from the Ambulance Companies any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted cost reports, information reports, cost statements, or requests for payment.

Any payments due after the adjustments have been made shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States reserves its rights to disagree with any calculations submitted by the Ambulance Companies or any of their subsidiaries or affiliates on the effect of inclusion of Unallowable Costs (as defined in this Paragraph) on the Ambulance Companies or any of their subsidiaries or affiliates' cost reports, cost statements, or information reports.

d. Nothing in this Agreement shall constitute a waiver of the rights of the United States to audit, examine, or re-examine the Ambulance Companies' books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

14. This Agreement is intended to be for the benefit of the Parties and Steve Zakheim only. The Parties do not release any claims against any other person or entity, except to the extent provided for in Paragraph 15 (waiver for beneficiaries paragraph), below.

15. The Ambulance Companies agree that they waive and shall not seek payment for any of the health care billings covered by this Agreement from any health care beneficiaries or their parents, sponsors, legally responsible individuals, or third party payors based upon the claims defined as Covered Conduct.

16. The Ambulance Companies warrant that they have reviewed their financial situation and that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and shall remain solvent following payment to the United States of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Agreement, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to the Ambulance Companies, within the meaning of 11 U.S.C. § 547(c)(1); and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which the Ambulance Companies were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

17. Contemporaneously with the signing of this Agreement, the United States and Relator and Relator's Counsel shall sign, and the United States shall retain, a Joint Stipulation of Dismissal with prejudice of all claims against the Ambulance Companies in the Civil Action, in a form agreed upon by the Parties, and pursuant to the terms of the Agreement. The United States shall provide copies of the Stipulation, which pursuant to Paragraph 19 may be filed by the United States only, to Ben Vernia, Counsel for the Ambulance Companies.

18. Contemporaneously with the signing of this Agreement, the United States and Relator and Relator's Counsel shall sign, and the United States shall retain, a Joint Stipulation of Dismissal with prejudice of all claims against Steve Zakheim in the Civil Action,

in a form agreed upon by the Parties, and pursuant to the terms of the Agreement. The United States shall provide copies of the Stipulation, which pursuant to Paragraph 19 may be filed by the United States only, to Ben Vernia, Counsel for the Ambulance Companies.

19. After the passage of 91 days from the receipt of the payment described in Paragraph 1, above, the Ambulance Companies shall provide written notification that neither the Ambulance Companies, nor any third party has commenced any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of any of the Ambulance Companies' debts, or seeking to adjudicate any of the Ambulance Companies as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for any of the Ambulance Companies or for all or any substantial part of any of the Ambulance Companies' assets. Upon receipt of this written notice from the Ambulance Companies, the United States shall promptly file in the Civil Action the Joint Stipulations of Dismissal described in Paragraphs 17 and 18.

20. Except as expressly provided to the contrary in this Agreement, each Party shall bear its/his own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement.

21. The Parties represent that this Agreement is freely and voluntarily entered into without any degree of duress or compulsion whatsoever.

22. This Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Agreement is the United States District Court for the Eastern District of New York.

23. For purposes of construction, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

24. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

25. The individuals signing this Agreement on behalf of the Ambulance Companies represent and warrant that they are signing this Agreement in their official capacities only and that they are authorized by the Ambulance Companies to execute this Agreement. The individual signing this Agreement on behalf of Relator represents and warrants that he is authorized by Relator to execute this Agreement. Relator's Counsel represents and warrants that he is signing with authority to bind himself and his past and current law firms. The United States signatories represent that they are signing this Agreement in their official capacities and that they are authorized to execute this Agreement.

26. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

27. This Agreement is binding on the Ambulance Companies' successors, transferees, heirs, and assigns.

28. This Agreement is binding on Relator's successors, transferees, heirs, and assigns, and those of Relator's Counsel.

29. All Parties and signatories consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

30. This Agreement is effective on the date of signature of the last signatory to the Agreement (the Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

THE UNITED STATES OF AMERICA

DATED: 2/16/10   BY: *Sara McLean*
Sara McLean
Elizabeth A. Rinaldo
Trial Attorneys
Commercial Litigation Branch
Civil Division
United States Department of Justice

BENTON J. CAMPBELL
UNITED STATES ATTORNEY

DATED: 2/17/10   BY: *Edward Newman*
Edward Newman
Assistant United States Attorney
Eastern District of New York

DATED: 2/16/10   BY: _____
Gregory E. Demske
Assistant Inspector General for Legal Affairs
Office of Counsel to the
Inspector General
Office of Inspector General
United States Department of
Health and Human Services

METROPOLITAN AMBULANCE & FIRST-AID CORP.
(NOW KNOWN AS SEZ METRO CORP.)
METRO NORTH AMBULANCE CORP. (NOW KNOWN AS SEZ NORTH CORP.)
BIG APPLE AMBULANCE SERVICE, INC. (FORMERLY DBA UNITED AMBULANCE)
<u>DEFENDANTS</u>

DATED: 1/26/2010 BY: _____
Steve Sakheim, President

DATED: 1-29-2010 BY: _____
Benjamin J. Vernia
The Vernia Law Firm
Counsel

                               LARRY KAPLAN
                                 RELATOR

DATED: 1/29/10  BY: _____
                          Larry Kaplan

DATED: 2/1/10  BY: _____
                          Philip R. Michael
                          Individually, and as Counsel for Larry Kaplan, Relator